Wood & Duvall, Appellees, v. Iowa Building & Loan Association, Appellant.

**Contract of employment:** BREACH: REMEDY. A contract of employment for personal services to be performed in the future, is not the subject for an action for specific performance, but the remedy in case of breach is a law action for damages.

**Contract of employment:** TERMINATION BY LEGISLATIVE ENACTMENT. A contract for personal services entered into with a building and loan association providing for compensation from a specified fund, and which contemplates a possible change in the law rendering the creation of such a fund and payment of services therefrom illegal, is terminated by a subsequent legislative act to that effect, thus rendering performance impossible.

*Appeal from Polk District Court.*— Hon. S. F. Prouty and Hon. W. H. McHenry, Judges.

Tuesday, February 7, 1905.

Action in equity to enforce the provisions of a written contract, for an accounting, etc. Plaintiffs are copartners, and the defendant, as its name implies, is a building and loan association organized and incorporated under the laws of this State. The contract in question was entered into in September, 1897. Therein plaintiffs agreed that for the period beginning on the date named and ending January 1, 1903, they would engage exclusively in the sale of the capital stock of said association, and in connection therewith appoint, take charge of, and direct the entire agency force engaged in the procurement of subscriptions to such capital stock. Further, that they would have no interest adverse to the association, but would use all efforts to build up and promote the best interests thereof. It was then provided that in consideration for such services the association agreed to pay fifty per cent. of the gross expense fund received on business done from and after the date of the contract and while the plaintiff firm was actively employed under said contract, and fifty per cent of the receipts to the expense fund on all such business for five years after the expiration or termination of the contract; also all membership fees collected on stock sold by plaintiffs or their agents, and a fixed sum named on all full-paid or prepaid stock sold by them. Quarterly settlements are stipulated for, and to that end the books, records, etc., of the association are to be open to inspection. It was then provided that the association retained the right to change its articles of incorporation, by-laws, and method of doing business whenever the laws of the State or the rules or requirements of the State Auditor or other supervising officer of the State may require, or whenever its board of directors may deem expedient; and to all such changes the plaintiff firm agreed, upon notice, to conform, anything in the contract to the contrary notwithstanding.

Plaintiffs allege that they entered upon the performance of said contract, and continued therein until July 1, 1900, when defendant refused to longer recognize or be

bound by said contract, and discharged plaintiffs from its
employ, and has refused and still refuses to make quarterly
account of the amounts due plaintiffs. A decree is prayed
for directing defendant to allow plaintiffs to proceed under
the contract, that an account be taken of the amount which
has accrued and become due since July 1, 1900, and for such
order with respect to all accounts yet to mature as may be
equitable.

The answer alleges that under the provisions of the
articles of incorporation and by-laws of the defendant asso-
ciation in force at the time of the execution of the contract
sued upon an expense fund was provided for, out of which
all expenses of the association were to be paid; that such is
the fund referred to in said contract. The provisions so
pleaded are as follows: The expense fund " shall consist
of ten cents per share deducted from each monthly pay-
ment in Division A stock, and six cents per share deducted
from each monthly payment in Division C stock, but shall
not exceed eight dollars for the maturing of a single share
of installment stock. There shall also be paid into the ex-
pense fund, from the profits, two dollars per year for each
share of deposit or prepaid stock." The answer then alleges
the enactment of, chapter 69, page 51, Acts Twenty-eighth
General Assembly, which took effect May 3, 1900, and the
amendment of its articles of incorporation and by-laws to con-
form thereto; that from the time thereof it has had no ex-
pense fund, nor any receipts thereto. The defendant pleads
that accordingly the further performance of said contract
on its part is impossible.

With the answer the defendant presented a counterclaim
based upon the allegation that subsequent to July 1, 1900,
the members of the plaintiff firm went abroad in the State,
and, in violation of the letter and spirit of the contract al-
leged, misrepresented the financial condition of the defend-
ant association, asserting that it was insolvent, etc., and
thereby induced many of its shareholders to withdraw their

interests; that they also procured to be assigned to them much
of the outstanding stock of the association, which they pre-
sented, and demanded the redemption thereof.   Damages in
a sum named are claimed.   The case came on for trial before
Judge Prouty, and was submitted upon the sole question as
to the legal rights of the parties under the contract; the
affirmative claim for damages pleaded in the answer to be
heard and determined at some future date.   An interlocutory
decree, so denominated, was entered by the court, in which it
was found that since July 1, 1900, the defendant had paid
its expenses from its profit earnings, and that under the
present statute it has the power to use for expenses an annual
sum, to be taken from profit sources, equal to two and one-
half per cent. of its assets; that plaintiffs were not entitled to
recover upon or out of a fixed charge upon stock payments,
but that defendant was liable upon the contract in suit in
a sum " equal to one and one-fourth per cent. upon so much
of its assets as arises out of and is based upon the stock so-
licited or caused to be sold by plaintiffs under said contract
from July 1, 1900, and interlocutory judgment for said
amount is hereby rendered in favor of plaintiffs."   A refer-
ence was ordered, conditioned upon a failure of the parties
to agree upon the amount plaintiff firm is entitled to recover.
From such interlocutory decree the defendant appeals.   At
a later term said cause came on again before the court, Judge
McHenry presiding, and there was then tried the issue under
the counterclaim pleaded by the defendant, resulting in a
dismissal thereof and judgment against the defendant for
costs.   From this judgment the defendant appeals.—*Re-
versed* on first appeal; *Affirmed* on second appeal.

*Baily & Stipp,* for appellant.

*Dale & Harvison,* for appellees.

Bishop, J.— It will be observed that the plaintiff firm

is not seeking a recovery in the way of damages growing out of a breach of the contract alleged.    The relief prayed for

1. CONTRACT OF EMPLOYMENT: breach; remedy.

is in the nature of a demand for specific performance, and, secondarily, for an accounting to ascertain the amount that had become due under the contract, and for judgment.    The contract was one for personal services to be rendered.    We know of no rule under which future performance of a simple contract of that character can be enjoined or enforced by a decree of court. In all such cases the parties are remitted to a law action for damages.    But in view of what is presently to be said this point need not be elaborated upon.

As the plaintiff firm does not claim to have solicited or made sales of any stock since July, 1900, the date of the last settlement, it must be understood that the demand for

2. CONTRACT OF EMPLOYMENT: termination by legislative enactment.

an accounting is predicated upon that provision of the contract under which plaintiffs were to be paid fifty per cent. of the expense fund arising out of payments on stock sold previous to that date.    Proceeding upon this assumption, we have for determination the question whether, in view of the change in the situation dictated by the subsequent act of the Legislature, there remained to plaintiffs any enforceable right under the contract.    The statute in force at the time of the making of the contract authorized the creation of an expense fund substantially as provided for in the articles of incorporation and by-laws of the defendant association. That the parties in making their contract had in mind such provisions of the statute, as well as the laws of the association, must be accepted as true, and this to begin with.    Now, by a further provision of the statute enacted prior to the organization of the defendant association, and in force at the time of the contract in question, it was provided that such corporations, in common with all others, should at all times be subject to legislative control to the extent that the rights and powers, granted thereto " may be at any time altered,

abridged, or set aside by law,   *  *  *  whenever the General Assembly shall deem necessary for the public good." Code, section 1619 (Code 1873, section 1090). With respect to such provision, the presumption authorized by law need not be indulged in. The parties themselves gave recognition thereto, and made their contract to depend as to its terms and the enforceability thereof upon the continuance of the laws then in force, and subject to be affected by any future legislation upon the subject.

Now, the act of the Twenty-Eighth General Assembly in effect worked a repeal of the former statute authorizing the creation of an expense fund. After such act took effect there was no longer any right to levy a fixed charge upon stock or stock payments for such purpose, or otherwise to set apart moneys to be devoted to the payment of expenses, whatever the source from which the same were derived. The provision is simply that " all expenditures and expenses for management and conducting the affairs of said association * * * shall be paid from the receipts of interest, premiums, and other sources of profit." The act provides for a limitation upon the amount which may be thus expended — as applied to the defendant association being two and one-half per cent. on its assets as shown by its last annual report. The defendant amended its articles of incorporation and by-laws to bring the same into conformity with the change thus made in the statute. Consideration of the foregoing must make it manifest that with the taking effect of the amendatory statute it became impossible for the defendant to carry out its contract by making payments conformably to the terms thereof as written. By general acceptance the expression " expense fund " means a fund set apart and dedicated to expense purposes. The defendant no longer has an expense fund which it can divide with plaintiffs, either voluntarily or under stress of judicial decree. True, it is still authorized to meet the current expenses of conducting its business, but this it may do only by drawing upon moneys on hand derived

from profit sources, and in a sum sufficient for that purpose, observing always the limitation prescribed in the statute. We think it must be said that the situation in which the parties find themselves placed is one contemplated by the provisions of their contract. Proceeding upon this assumption, it must also be said that the plaintiff firm is in no position to complain. And this not only because of such provision in the contract, but by virtue of the prevailing doctrine that a change in the law which makes the performance of a contract impossible or illegal operates to release the obligor from his obligation to perform. *Brady v. Insurance Co.,* 11 Mich. 425; *Cordes v. Miller,* 39 Mich. 581 (33 Am. Rep. 430); *Jones v. Judd,* 4 N. Y. 412; *Wharton* on Contracts, sections 297, 305; 9 Cyc. 629.

This must be true, as otherwise relief could be granted only upon the hypothesis that the power is lodged in the court to make a new contract for the parties, and to require of the defendant that, without reference to the amount actually needed by it to pay current expenses, it must draw from profit sources the full sum of two and one-half per cent. on all its assets traceable to payments on stock sold by the plaintiff firm, and make division thereof on a moiety basis. There is no authority that recognizes the existence of such power in the courts. Moreover, as we think, any attempt, however made, to divert the profit fund of the association to the extinguishment of a contract obligation in character as here claimed under the guise of current expense, would be an act in contravention of both the letter and the spirit of the present statute. It follows that the court, as presided over by Judge Prouty, erred in finding that the contract had been breached, and in holding that in view of the extinguishment of the expense fund, compensation could be made by resorting to moneys in the hands of the association derived from profit sources.

Counsel for appellees point out that the moneys sought to be recovered by the plaintiff firm in this action had actually

been earned prior to July, 1900; that nothing remained to be done thereafter but to make quarterly settlements and payments. In view of this it is said that, if the act of the Twenty-Eighth General Assembly is to be given effect as contended for by appellant, the same is violative of the Constitution, in that the result would be, as applied to this case, to impair a fixed contract obligation. In our opinion, the contention is without force. As we have already seen, the right was reserved in the Legislature to change the law at pleasure, and thereunder it might go so far, even, as to legislate such associations out of existence. The parties contracted with such provision as to the right and authority of the Legislature staring them in the face. More than that, they made it a part and parcel of their contract. But, if this were not so, it must be said that the obligation of the defendant to pay was conditioned upon its having a certain fund out of which to make payment. In no event could plaintiffs be heard to assert that they were possessed of a claim ripe for judgment until it had first been made clear that a fund existed out of which, by the terms of their contract, they were entitled to be paid.

II. At a later term of the court the matter involved in the counterclaim pleaded by defendant came on for trial, Judge McHenry presiding. The judgment of dismissal was based upon the insufficiency of the evidence to support the allegations of such counterclaim. We have read the record in full, and we agree that the trial court had no warrant for reaching any other conclusion.

From what we have said it follows that in respect of the first appeal the interlocutory decree must be, and it is reversed; in respect of the second appeal, the judgment dismissing the counterclaim must be, and it is, affirmed.

*Reversed* on first appeal; *affirmed* on second appeal.